**Name: Moulaye, Abdelkerime Hedeye**

**A Number: 240408610**

***PRO SE***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Moulaye Abdelkerime Hedeye**, and **Moustapha Sylla**, as Next Friend

Petitioners/Plaintiffs,

**v.**

**WILLIAM JOYCE**, in his official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement;
**Markwayne Mullin,** in his official capacity as Secretary, U.S. Department of Homeland Security;
**TODD LYONS**, in his official capacity as Director, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

Respondents/Defendants.

**Civil Action No.:**

**[PROPOSED] ORDER**

Upon consideration of Petitioner's Motion for a Temporary Restraining Order, the Memorandum of Law in Support of the Motion and the Complaint and Verified Petition and Exhibits thereto, IT IS HEREBY ORDERED that:

1. Respondents are ORDERED to file a return as to why the Petition and temporary restraining order should not be granted by _____________;

2. Petitioner shall have an opportunity to reply by _____________;

3. This matter shall be heard by the Court on _____________;

4. Pending consideration, Respondents ARE HEREBY RESTRAINED from (a) attempting to remove the Petitioner outside of the jurisdiction of the U.S. District Court for the Southern District of New York and (b) removing Petitioner from the United States;

5. Pending consideration, Respondents ARE HEREBY RESTRAINED from moving Petitioner unless seventy-two (72) hours written notice of any movement is provided to Petitioner's counsel;

6. And such other and further relief as the Court may find appropriate:

7. Service of this Order shall be made by Petitioner on the United States Attorney for the Southern District of New York by [Time]____________ on [Date]______________ and shall constitute good and sufficient service.

**IT IS SO ORDERED.**

//

| | |
|---|---|
| DATED: _____________, 2026<br>New York, NY | ______________________________<br>Hon.<br>United States District Judge |

**Name: Moulaye Abdelkerime Hedeye**

**A Number: 240408610**

***PRO SE***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Moulaye Abdelkerime Hedeye**, and **Moustapha Sylla**, as Next Friend<br><br>Petitioners/Plaintiffs,<br><br>**v.**<br><br>**WILLIAM JOYCE**, in his official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement;<br>**Markwayne Mullin,** in his official capacity as Secretary, U.S. Department of Homeland Security;<br>**TODD LYONS**, in his official capacity as Director, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>Respondents/Defendants. | **Civil Action No.:** |

**PETITIONER'S NOTICE OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

| | |
|---|---|
| **Moving Party:** | Plaintiff-Petitioner |
| **Place:** | United States District Court for the Southern District of New York<br>David Patrick Moynihan Courthouse<br>500 Pearl Street<br>New York, 10007 |
| **Relief Sought:** | Pursuant to Federal Rules of Civil Procedure 65(b)(2) ("Fed. R. Civ. P."), Petitioner respectfully moves the Court for a temporary restraining order pending adjudication of his/her Complaint and Verified Petition for Writ of Habeas Corpus ("Petition") |

| | |
|---|---|
| **Papers Submitted in Support:** | Petition and Exhibits thereto and Memorandum of Law |
| **Intent to Reply:** | Petitioner respectfully requests the opportunity to respond to any responses filed by Respondents to the instant motion. |

Dated: 07/16/2026
New York, NY

Respectfully submitted,

s/ Moustapha Sylla
Moustapha Sylla

Next Friend of Petitioner (pro se)

**Name: Moulaye Abdelkerime Hedeye**

**A Number: 240408610**

***PRO SE***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Moulaye Abdelkerime Hedeye**, and **Moustapha Sylla**, as Next Friend

Petitioners/Plaintiffs,

**v.**

**WILLIAM JOYCE**, in his official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement;
**Markwayne Mullin,** in his official capacity as Secretary, U.S. Department of Homeland Security;
**TODD LYONS**, in his official capacity as Director, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

Respondents/Defendants.

**Civil Action No.:**

**INTRODUCTION**

1. This is a petition for a writ of habeas corpus filed **pro se** on behalf of **Moulaye Abdelkerime Hedeye** (hereinafter "Petitioner"), seeking relief to remedy his unlawful arrest and detention.
2. This Petition is being filed by Moustapha Sylla, the Petitioner's **Next Friend**.
3. Petitioner has been detained at **Brooklyn MDC 80 29th Street, Brooklyn, NY 11232.**
4. **Moulaye Abdelkerime Hedeye** is an asylum seeker and resident of New York who was arrested by U.S. Immigration and Customs Enforcement (ICE) on December 15, 2025,

approximately 14:00 p.m, near 9501 Avenue I, Brooklyn, NY. ICE agents approached him while he was getting into his car to go to work and arrested him.

5. **Moulaye Abdelkerime Hedeye**, an asylum seeker who entered the United States on May 14, 2023.
6. Upon information and belief, he was detained by ICE simply for being Black..
7. At the time of this incident, Mr. Moulaye was not engaged in any illegal activity.
8. Mr. Moulaye is an asylum seeker from Mauritania. Prior to his arrest, he consistently complied with all immigration requirements and never missed a scheduled immigration appointment. He was actively seeking legal counsel to assist him with his asylum case. Despite his full compliance with the immigration process and his lawful presence in the United States while his asylum application was pending, Mr. Moulaye was apprehended by U.S. Immigration and Customs Enforcement (ICE) without legal justification.
9. At the time of the drafting of this petition filing, Petitioner is a noncitizen who has been detained in immigration custody for over seven months. On February 11, 2026, an immigration judge ordered his removal. On February 24, 2026, Mr. Moulaye filed an appeal, and he has been awaiting a decision on his appeal ever since. We respectfully request that the Court grant Mr. Moulaye release while he awaits the outcome of his appeal. Mr. Moulaye has never been arrested for any criminal offense, demonstrating that he poses no danger to the public. Additionally, he has complied with all immigration requirements by attending his scheduled immigration appointments prior to his detention and does not pose a flight risk.
10. Petitioner’s continued detention while he awaits a decision on his appeal, without an individualized hearing to determine whether his detention is justified based on a finding

that he presents a danger to the community or a flight risk, violates the Due Process Clause of the Fifth Amendment.

11. Petitioner's detention has also placed undue burden on his/her ability to search for or consult with counsel.

12. Additionally, Respondents have not provided Petitioner with the opportunity to ask for a credible fear interview.

13. Petitioner is not a flight risk for the following reasons: Prior to his arrest, Mr. Moulaye was employed, saving money, and actively seeking legal counsel to ensure his compliance with U.S. immigration law. He has consistently demonstrated his intention to pursue his immigration case through the proper legal process. In the months preceding his arrest, Mr. Moulaye met with several attorneys to secure legal representation and to prepare for his upcoming immigration proceedings.

14. Petitioner merits positive discretion because he has demonstrated consistent compliance with all immigration requirements. He has no criminal history and has shown a strong commitment to resolving his immigration case through lawful means. The petitioner has deep community ties, has acted responsibly since his arrival in the United States, and has made significant efforts to obtain legal representation to ensure full compliance with the immigration process. These factors collectively support a favorable exercise of discretion in his case.

15. Additionally, he is not a danger to the public and has no history of perpetrating violent crimes.

16. Petitioner's ongoing detention has caused enormous harm by separating him/her from family, friends, and his/her community and risks further harm if not remedied.

17. I.C.E.'s actions violate Petitioner's rights under the Fifth Amendment of the U. S. Constitution, the INA, the Administrative Procedure Act and its own federal regulations.

18. Accordingly, this Court should declare ICE's continued detention of Petitioner unlawful, enjoin his transfer outside this District, and order his immediate release while he awaits a decision on his appeal. In the alternative, the Court should order that Petitioner be provided with an individualized bond hearing to determine whether his continued detention is justified. If the Court declines to order Petitioner's release, it should require that Petitioner be transferred to a detention facility closer to New York City so that he is not deprived of meaningful access to counsel.

## PARTIES

19. Petitioner, **Moulaye Abdelkerime Hedeye**, is an individual who has lived in the United States since May 05, 2023.

20. Upon information and belief, Petitioner is detained at a holding cell at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232. Petitioner is in the custody and direct control of Respondents and their agents.

21. Respondent William P. JOYCE is named in his official capacity as the Acting Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of petitioners. Respondent Joyce's address is New York ICE Field Office Director, 26 Federal Plaza, New York, New York 10278.

22. Respondent Todd LYONS is the Acting Director of ICE. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States; routinely transacts business in

the Southern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a custodian of the Petitioner. Respondent LYONS's address is Immigration and Customs Enforcement, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-5900.

23. **Markwayne Mullin** is named in his official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, he irresponsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove the Petitioner; and as such is a custodian of the Petitioner. Respondent Mullin's address is U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.5.

24. Respondent Todd Blanche is Attorney General of the United States. In this capacity, he routinely transacts business in the Southern District of New York; is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(g)(2007); and as such is a custodian of the Petitioner. Respondent Blanche's address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

## **Jurisdiction and Venue**

25. This Court has jurisdiction under the U.S. Constitution. U.S. Const. art. I § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless in Cases of Rebellion or Invasion the public safety may require."). The Suspension Clause protects

the right to the writ of habeas corpus where no adequate or effective alternative remedy exists. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008).

26. This Court also has subject matter jurisdiction under 28 U.S.C. § 2241 (Habeas Corpus); 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1651 (the All-Writs Act); and 5 U.S.C. § 701 (the Administrative Procedure Act).

27. This Court has additional remedial authority under 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act), to grant injunctive and declaratory relief.

28. Administrative exhaustion is unnecessary as it would be futile.

29. Venue is proper in the U.S. District Court for the Southern District of New York because Respondents are officers of United States agencies, and at the time of filing, Petitioner is detained at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232, within the jurisdiction of the Southern District of New York. A substantial part of the events or omissions giving rise to these claims occurred in New York County, and there is no real property involved in this action. *See* 28 U.S.C. § 1391(e)(1).

## RELEVANT FACTS AND PROCEDURAL HISTORY

*30.* Petitioner is a long-time resident of New York City who entered the United States on May 05, 2023.

*31.* Petitioner first came to the United States in order to seek asylum as protection from persecution he would face if returned to his home country.

32. At the time of this incident, Mr. Moulaye was not engaged in any illegal activity. He was not provided with legal justification for his arrest.

33. Mr. Moulaye fears returning to his home country of Mauritania and is seeking asylum, withholding of removal, humanitarian parole, and Convention Against Torture.

34. Petitioner believes he is currently being held in immigration detention at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232 or another New York based holding facility.

35. The petitioner has been detained for 7 months. Individuals held in ICE detentions, such as those located at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232, have reported concerning conditions that raise humanitarian, health, and due-process issues. These concerns often include:

   a. Prolonged waiting periods- Some individuals report being held for many months without clear information about when they will be processed, released, or moved.

   b. Inadequate access to food and water - There have been complaints that detainees are not consistently offered adequate drinking water or meals.

   c. Cold temperatures and lack of basic comfort items.

   d. Communication barriers- Non- English speakers, like Mr. Moulaye, frequently struggle to understand instructions, ask questions, or understand their situation due to limited access to interpreters.

   e. Stressful or intimidating environment- the presence of armed officers, uncertainty about one's case, and the abrupt nature of an arrest can cause severe emotional distress for detainees.

   f. Lack of privacy and dignity- provide no privacy, and individuals frequently feel humiliated or degraded by the conditions.

36. Petitioner is not a flight risk because he has consistently complied with all immigration requirements, and has taken active steps to prepare for his upcoming asylum hearing. He has strong ties to the community and has demonstrated a sincere commitment to pursuing his immigration case through lawful channels.

37. He has shown responsibility and good character through his ongoing efforts to comply with immigration requirements and to prepare for his upcoming court proceedings. There is no evidence that he poses any threat to the safety or well-being of the community.

38. Therefore, Petitioner brings this action to seek injunctive, habeas, and declaratory relief ordering Respondents to release him/her.

## LEGAL FRAMEWORK

***A. Suspicion-less Stops Based on Racial Profiling***

39. The constitutional, statutory, and regulatory framework is clear about the practices immigration officers must follow. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "Except at the border and its functional equivalents," immigration agents may stop individuals in public only after identifying "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" of a violation of immigration law. United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975); Benitez-Mendez v. I.N.S., 752 F.2d 1309, 1311 (9th Cir. 1983), amended, 760 F.2d 907 (9th Cir. 1983); see also 8 C.F.R. § 287.8(b)(2). Reasonable suspicion cannot be based "on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." United States v. Rodriguez Sanchez, 23 F.3d 1488, 1492 (9th Cir. 1994).

40. The federal agents that detained Petitioner did not abide by that framework.

41. Petitioner was not provided or demonstrated a warrant for his/her arrest while being detained.

42. The manner in which the foregoing stop had been conducted bears no hallmarks of reasonable suspicion: there are no indicia that agents had any specific articulable facts sufficient to justify a seizure. Instead, only those who appear to be nonwhite, at a location frequented by immigrants, were seized.

43. It is illegal for Defendants to stop anyone—U.S. citizens or not— without reasonable suspicion. But predictably, in addition to noncitizens, Defendants' practices have led to numerous U.S. citizens who work, reside, or just happen to be in neighborhoods with large numbers of people of color also getting swept up.

### *B. A Show of Force: Intimidation, Violence, and Anonymity*

44. While the government may describe the encounters agents and officers are having with individuals as consensual, they are far from that. A stop, even brief, must be supported by reasonable suspicion if "a reasonable person would [believe] that he was not free to leave." See United States v. Mendenhall, 446 U.S. 544, 554 (1980).

45. Agents and officers have employed aggressive tactics with alarming regularity, but they have also refused to identify themselves or what agency they are with when asked.[2] Such refusal to identify themselves endangers public safety, frustrates any efforts at accountability, including in this case, and ultimately normalizes lawless and dangerous conduct behind the shield of anonymity.

46. Defendants have a policy and practice of effectuating warrantless arrests without making an individualized flight risk determination.

### *C. Arrests Without Identification of Authority or Reason*

47. Regulations also require immigration officers to (1) identify themselves "as an immigration officer who is authorized to execute an arrest"; and (2) "[s]tate that the

person is under arrest and the reason for the arrest," as soon as it is practical and safe to do so. 8 C.F.R. § 287.8(c)(2)(iii).

48. Defendants have a policy and practice of failing to identify themselves or explain the basis for an arrest. Agents often show up masked, without any visible badges or insignia indicating what agency they are with and have refused to identify themselves when asked. This has extended through the time of arrest, with individuals left in the dark about who they are interacting with or why they are under arrest.

D. *Conditions at* Brooklyn MDC 80 29th st *and the Denial of Access to Counsel*

49. Individuals detained in immigration operations have a right to counsel that is rooted in the Due Process Clause of the Fifth Amendment. *Usubakunov v. Garland*, 16 F.4th 1299, 1304 (9th Cir. 2021); *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005); see also *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1060-61 (C.D. Cal. 2019). When the government detains individuals as part of immigration enforcement efforts, it cannot impose restrictions on access to attorneys that undermine the opportunity to obtain counsel or communicate with retained counsel. See *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554, 565 (9th Cir. 1990); see also *Usubakunov*, 16 F.4th at 1300 ("Navigating the asylum system with an attorney is hard enough; navigating it without an attorney is a Herculean task."); Comm. of Cent. Am. Refugees v. INS, 795 F.2d 1434, 1439 (9th Cir. 1986) (recognizing that impediments to communication, especially in connection with a difficult-to-access facility, can constitute a "constitutional deprivation" where they obstruct an "established on-going attorney client relationship.").

50. Further, civil detainees have "a right to adequate food, shelter, clothing, and medical care." Youngberg v. Romeo, 457 U.S. 307 (1982). Their conditions of confinement become unconstitutional if they "amount to punishment," Bell v. Wolfish, 441 U.S. 520, 535 (1979), in other words, when "the harm or disability caused by the government's action . . . significantly exceed[s], or [is] independent of, the inherent discomforts of confinement[.]" Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004). After being taken by federal agents, Everardo's whereabouts were unknown for nearly an entire day. He then appeared listed as an I.C.E Detainee at 26 Federal Plaza, which is not an official detention center and does not have the facilities or capability to adequately hold the individuals they currently have.

51. Multiple reports from detainees have come out along with video footage of the conditions at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232. New York City's uncomfortably warm and humid weather has only worsened conditions at the Brooklyn MDC 80 29th Street, Brooklyn, NY 11232.

52. To make matters worse—and, indeed, to keep the true nature and scope of Respondents' constitutional violations, including those related to stops and arrest, hidden from the outside world—individuals detained at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232 have had their access to prospective or retained counsel severely and unconstitutionally restricted.

53. Even members of Congress, who have the ability to inspect federal detention facilities without prior notice have been denied and turned away by ICE at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232.

***E D. Defendants' Pattern of Illegal Conduct Is Officially Sanctioned***

54. Defendants' unlawful stops, arrests, and conditions at Brooklyn MDC 80 29th Street, Brooklyn, NY 11232 are the predictable result of directives from top officials to agents and officers. .

55. In January, the administration gave ICE field offices an arrest quota of 75 arrests a day.[1] As offices attempted to carry out such a mandate, workplace raids increased,[2] ICE check-ins became traps, and courthouse arrests surged.[3] Also, to help meet the quota, the administration granted agencies outside of DHS immigration enforcement powers.[4]

56. Meanwhile, the administration began systematically dismantling internal accountability mechanisms and restraints on immigration agents' and officers' conduct. The administration shut down multiple oversight agencies.[5] Investigations were closed. Officers no longer had to abide by previous enforcement priorities.[6] Long-standing guidance restricting enforcement operations in sensitive locations—schools, hospitals, places of worship and public demonstrations—was rescinded.[7]

---

[1] Nick Miroff & Maria Sacchetti, Trump Officials Issue Quotas to ICE Officers to Ramp Up Arrests, The Washington Post (last updated Jan. 26, 2025), https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump- quota/.

[2] Marianne LeVine, et al., ICE is Arresting Migrants in Worksite Raids. Employers are Largely Escaping Charges, The Washington Post (June 30, 2025), https://www.washingtonpost.com/immigration/2025/06/30/ice-raids-arrests-workers-companies/ (noting an April announcement by ICE officials that the agency had arrested more than 1,000 workers during Trump's first 100 days and collecting stories of workplace raids across the country); Mark Moran, ICE Detains More than 530 People in Workplace 'Raids' in U.S. Northeast, United Press International (Jan. 23, 2025), https://www.upi.com/Top_News/US/2025/01/23/ice-details-538-ion- workplace-raids/7811737692376/.

[3] Julia Ainsley, Trump admin tells immigration judges to dismiss cases in tactic to speed up arrests, NBC News (June 11, 2025), https://www.nbcnews.com/politics/national-security/trump-admin-tells-immigration-judges-dismiss-cases-tactic-speed-arrest-rcna212138; Luis Ferré- Sadurní, Inside a Courthouse, Chaos and Tears as Trump Accelerates Deportations, N.Y. Times (June 12, 2025),

[4] Press Release, DHS, Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokespersondirective-expanding-immigration-law-enforcement.

[5] Nicolae Viorel Butler, Court Forces DHS to Preserve Immigrant Rights Offices, Migrant Insider (May 27, 2025), https://migrantinsider.com/p/court-forces-dhs-to-preserve-immigrant?utm_source=CLINIC%2BMail&utm_campaign=f9e1ee6428-tips-6-2-25&utm_medium=email&utm_term=0_-663ab9ab77- 284225192"

[6] Press Release, DHS, Statement from a DHS Spokesperson on Directives Expanding Law Enforcement and Ending the Abuse of Humanitarian Parole (Jan. 21, 2025), https://www.dhs.gov/news/2025/01/21/statement-dhs-spokesperson-directives-expanding-law-enforcement-and-ending-abuse.

[7] Marisa Kabas, ICE agents get green light to make unjustified warrantless arrests, The Handbasket (June 12, 2025), https://www.thehandbasket.co/p/ice-warrantless- arrests-castanon-nava.

57. But these changes were not enough, according to the administration. In late May, Deputy Chief of Staff Stephen Miller summoned 25 ERO Field Office Directors and 25 HSI Special Agents to a meeting to demand that “everybody” be targeted.[8]

58. Under Miller’s directive, agents no longer needed to develop vetted target lists of individuals suspected of being in the United States unlawfully. ICE agents were instructed in an email to and aggressively “push the envelope,” including by pursuing “collaterals”—individuals that by definition would not have warrants. [9] As another e-mail put it: “If it involves handcuffs on wrists, it’s probably worth pursuing.”[10]

59. The administration set a new arrest quota of 3,000 arrests per day and reportedly threatened job consequences if officials failed to meet the arrest quota.[11]

60. The overriding message to agents and officers carrying out immigration operations on the ground was to prioritize arrest numbers, regardless of the law. Agents and officers were granted sweeping discretion to achieve this goal.

***F. The petitioner cannot be subject to expedited removal.***

---

[8] Stuard Anderson, Stephen Miller’s Order Likely Sparked Immigration Raids and Protests, Forbes, Jun. 9, 2025, https://www.forbes.com/sites/stuartanderson/2025/06/09/stephen-millers-order- likely-sparked-immigration-arrests-and-protests/.
[9] José Olivares, US immigration officers ordered to arrest more people even without warrants, The Guardian (June 4, 2025), https://www.theguardian.com/us- news/2025/jun/04/immigration-officials-increased-detentions-collateral-arrests.
[10] *Id.*
[11] Elizabeth Findell, et al., supra note 2; Julia Ainsley, et al., A sweeping new ICE operation shows how Trump’s focus on immigration is reshaping federal law enforcement, NBC News (June 4, 2025), https://www.nbcnews.com/politics/justicedepartment/ice-operation-trump-focus-immigration-reshape-federal-lawenforcement-rcna193494

61. Petitioner cannot be subjected to expedited removal as he is currently in removal proceedings under section 240 of the INA (8 U.S.C. 1229a), seeking asylum, and has lived in the United States for over two years.

62. Petitioner demonstrates a history of responsibility and law-abiding nature through his/her attendance of the court hearings and ICE check-ins throughout the period of his immigration application proceedings.

63. Pursuant to 28 U.S.C. § 2243, the Court either must grant the instant petition for writ of habeas corpus or issue an order to show cause to Respondents, unless Petitioner is not entitled to relief. If the Court issues an order to show cause, Respondents must file a response "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." 28 U.S.C. § 2243 (emphasis added).

64. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

65. This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious."). It also protects noncitizens who have been ordered removed from the United States and who face continuing detention. *Id.* at 690.

***66.*** The Court's ruling in *Zadvydas* is rooted in due process's requirement that there be "adequate procedural protections" to ensure that the government's asserted justification

for a noncitizen's physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id*. at 690 (quoting *Kansas v. Hendricks*, 521 U.S.

### E. ***Defendants' Illegal Conduct Will Continue if Not Enjoined***

67. The federal government has repeatedly made clear its intent to continue its operations and unlawful stops, arrests, and detentions. Defendants have been candid about their determination to continue pursuing these unlawful policies and practices, unless this Court enjoins them from doing so.

68. While immigration enforcement may be done lawfully, these statements demonstrate a commitment to continue operations at any cost, including at the expense of individuals' constitutional and legal rights. Plaintiffs have already been harmed, and they face a reasonable likelihood of continuing harm, as a result of Defendants' unlawful policies and practices described herein.

69. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrongs described herein. Injunctive and declaratory relief is necessary to redress their ongoing injuries.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION PROCEDURAL DUE PROCESS

70. The allegations in the above paragraphs are realleged and incorporated herein.

71. Petitioner is being detained without cause and in violation of his/her Constitutional right to Due Process under the Fifth Amendment.

72. The Procedural Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of a protected interest without notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. at 319, 333 (1976).

73. Respondents provided Petitioner with no notice or opportunity to be heard prior to arresting and detaining him/her.

74. Respondents have offered Petitioner no meaningful opportunity to be heard or challenge hiss/her detention since detaining him/her.

75. Petitioner's detention thereby deprives him/her of Petitioner's rights to Due Process under the Fifth Amendment of the United States Constitution.

76. Petitioner has no adequate remedy at law.

## COUNT TWO

## VIOLATION OF THE OF THE FIRST AND FIFTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

77. Petitioner realleges and incorporates by reference the paragraphs above.

78. U.S. citizens and noncitizens alike are guaranteed the right to due process under the Fifth

79. Amendment to the United States Constitution, which includes the rights to access courts and to participate in state court proceedings as a witness, party or complainant.

80. U.S. citizens and noncitizens alike are guaranteed the right of petition under the First Amendment to the U.S. Constitution, which includes the right to petition the Government for a redress of grievances. This right to petition includes the right to access courts and to participate in court proceedings as a witness, party or complainant.

81. As a result of Respondents' unlawful arrest and detention of Petitioner, his/her rights were violated, and he has and continues to suffer prejudice.

82. Petitioner has no adequate remedy at law.

## COUNT THREE

## RELEASE ON BAIL PENDING ADJUDICATION

83. Petitioner realleges and incorporates by reference the paragraphs above.

84. This Court has the inherent authority to order the release of habeas petitioners challenging immigration detention. See Vega v. United States, 514 F. Supp. 2d 767, 770 (W.D. Pa. 2007) (citing Johnston v. Marsh, 227 F.2d 528, 531 (3d Cir. 1955)); see also Mapp v. Reno, 241 F.3d 221, 230 (2d Cir. 2001). Courts have recognized that such authority includes the power to order an immigration detainee's release where continued detention is unjustified or would render judicial review ineffective. Vega, 514 F. Supp. 2d at 770–71 (ordering release of an immigration detainee); Mapp, 241 F.3d at 226–30 (recognizing authority to grant interim release of an immigration detainee). In addition, the Third Circuit has held that prolonged immigration detention during the pendency of removal proceedings raises serious due process concerns and may require relief when detention becomes unreasonable. See Diop v. ICE/Homeland Security, 656 F.3d 221, 231–34 (3d Cir. 2011); Leslie v. Attorney General of the United States, 678 F.3d 265, 271–73 (3d Cir. 2012); Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 475–78 (3d Cir. 2015). Accordingly, this Court has authority to order Petitioner's release while his appeal before the Board of Immigration Appeals remains pending.

85. Bail pending habeas is appropriate when a petitioner raises "substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992).

86. Petitioner meets this standard here. This petition raises constitutional claims on which he/her has a high probability of success. And Petitioner's immediate release is necessary to make this remedy effective. As long as Petitioner remains detained, his/her physical and mental health is at continued, serious risk, and his/her ability to litigate his/her asylum and immigration claims is jeopardized.

## COUNT FOUR:

## VIOLATION OF THE INA, REGULATIONS THEREUNDER, AND THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE

87. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

88. Respondents presumed basis for detaining Petitioner is unknown.

89. Under the terms of the INA and the governing regulations, Petitioner's detention is unlawful.

## COUNT FIVE

## DENIAL OF ACCESS TO COUNSEL

90. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91. Petitioners have constitutional and statutory rights to counsel pursuant to the Fifth Amendment, the First Amendment, and the Immigration and Nationality Act, 8 U.S.C. §1362.

92. Immigrants challenging efforts to remove them from the United States have a right to counsel, at their own expense, pursuant to the Fifth Amendment. See United States v. Campos Asencio, 822 F.2d 506, 509 (5th Cir. 1987).

93. Moreover, "[t]here is also a long-recognized First Amendment right to hire and consult an attorney." Nat'l Fed'n of Indep. Bus. v. Perez, 5:16-CV-00066-C, 2016 WL 3766121, at *31 (N.D. Tex. June 27, 2016). "[T]he scope of the First Amendment's right is determined by balancing the [plaintiff's] interests in communication with the government's interest in preventing communication." Jacobs v. Schiffer, 204 F.3d 259, 265 (D.C. Cir. 2000).

94. "Restrictions on speech between attorneys and their clients directly undermine the ability of attorneys to offer sound legal advice. As the common law has long recognized, the right to confer with counsel would be hollow if those consulting counsel could not speak freely about their legal problems." Martin v. Lauer, 686 F.2d 24, 32 (D.C. Cir. 1982). 33

95. Petitioner was seized without cause, detained without provided an opportunity to call or reach out to counsel, or even access to a neutral decisionmaker.

96. Petitioner has been completely denied the access to counsel through this detention.

## COUNT SIX

## VIOLATION OF 8 U.S.C. § 1357(A)(2) WARRANTLESS ARRESTS WITHOUT PROBABLE CAUSE OF FLIGHT RISK

97. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

98. 8 U.S.C. § 1357(a)(2) requires that arrests without a warrant be accompanied by "reason to believe" that an individual is "likely to escape before a warrant can be obtained for [their] arrest."

99. Respondents have a policy, pattern, and practice of making arrests without any warrant without making an individualized determination of flight risk. They have no mechanism

for ensuring compliance with the statutory limits of agents' and officers' warrantless arrest authority and do not provide guidance to agents and officers on how to make an individualized determination of likelihood of escape. Respondents permit agents and officers to make warrantless arrests carte blanche in violation of law.

100. Respondents' policy, pattern, and/or practice of making warrantless arrests without the required individualized flight risk analysis is "final agency action" that is "in excess of statutory jurisdiction, authority, or limitations" under 8 U.S.C. § 1357(a)(2). 5 U.S.C. §§ 704, 706(2)(C).

101. Separate from the APA, Respondents' policy, pattern, and practice of making warrantless arrests without the required individualized flight risk analysis is ultra vires.

## COUNT SEVEN

## VIOLATION OF FOURTH AMENDMENT: UNREASONABLE SEIZURES ON BEHALF OF THE STOP/ARREST PETITIONER AND THE SUSPICIONLESS STOP CLASS AGAINST ALL RESPONDENTS

102. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

103. Except at the border and its functional equivalents, the Fourth Amendment prohibits Respondents from conducting a stop to question a person without reasonable suspicion that a person is a noncitizen unlawfully in the United States.

104. "A person's mere propinquity to others independently suspected of [unlawful] activity does not, without more, give rise to probable cause to search [or seize] that person." Perez Cruz v. Barr, 926 F.3d 1128, 1138 (9th Cir. 2019) (quotation omitted). "'Reasonable suspicion' is no different." *Id.*

105. Respondents have a policy, pattern, and practice of stopping individuals without regard to reasonable suspicion that they are unlawfully in the United States.

106. As a part of Respondents' policy, pattern, and practice, when conducting stops, Respondents engage in a show of force so overwhelming that a reasonable person would not feel free to leave. As a matter of policy, pattern, and practice, Respondents do not evaluate the need for force or tailor the force they use to the circumstances of individual stops and arrests.

107. Respondents' policy, pattern, and practice violates the Fourth Amendment to the U.S. Constitution.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

1) Assume jurisdiction over this matter;
2) Declare that Petitioner's detention violates the Due Process Clause of the Fifth
3) Amendment, the Administrative Procedure Act; Section 1225(b)(1)(A) of the
4) Immigration and Nationality Act; the First Amendment, and the Rehabilitation Act;
5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately.
6) Order that Petitioner not be transferred outside the Southern District of New York, except to be released;
7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and
8) Grant any further relief this Court deems just and proper.

Respectfully submitted,

Moustapha Sylla

Next Friend, *Pro Se*

Date: July 16, 2026

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Moustapha Sylla, hereby certify that I am familiar with the case of the named petitioner. I hereby swear under penalty of perjury that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: Julliet 16, 2026

Name: Moustapha Sylla

Signature: ____ MOUHAMADOU.M.Sylla